# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00447-CV

**Bexar Metropolitan Water District, Appellant**

**v.**

**City of Bulverde, Texas; Guadalupe-Blanco River Authority; City of Boerne, Texas; and City of Fair Oaks Ranch, Texas, Appellees**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT NO. C2003-1201A, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

## O P I N I O N

This appeal concerns the effects of changes made in 2003 to appellant Bexar Metropolitan Water District's ("BexarMet") enabling act. Appellees the City of Bulverde and the Guadalupe-Blanco River Authority ("GBRA") sought declaratory judgments from the district court stating that BexarMet could not provide services outside its boundaries, that BexarMet's boundaries are those set out in sections 5 and 5A of its enabling act, and that BexarMet could not annex and incorporate additional area to its territory. On cross-motions for summary judgment, the district court granted summary judgment in favor of Bulverde and GBRA and made the requested declarations. BexarMet appeals contending that the district court did not have jurisdiction over the case and, alternatively, if there is jurisdiction, that the district court's declarations regarding service outside BexarMet's boundaries and BexarMet's authority to annex additional territory were

erroneous. Because we conclude that the district court had jurisdiction and that its declarations were correct, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

BexarMet was created in 1945 and was given the authority of a "governmental agency, a body politic and corporate, and a municipal corporation." Act of May 9, 1945, 49th Leg., R.S., ch. 306, § 2, 1945 Tex. Gen. Laws 491, 492 ("BexarMet Act"). BexarMet's original enabling act stated that BexarMet's district was within Bexar County, Texas, and set forth its boundaries using a metes and bounds description that the parties agree was largely understood to coincide with the 1945 city limits of San Antonio. *See id.* § 5, 1945 Tex. Gen. Laws at 494. The original enabling act allowed BexarMet to expand its boundaries by annexing territory and also provided that BexarMet's boundaries would extend automatically to include any territory annexed into the City of San Antonio. *Id.* §§ 6, 6a, 1945 Tex. Gen. Laws at 496-97.

On several occasions, BexarMet expanded its service area outside the boundaries defined in its original enabling act. However, rather than using its annexation powers, BexarMet enlarged its territory by obtaining certificates of convenience and necessity ("CCNs") from the Texas Commission on Environmental Quality. As a result of obtaining the CCNs, BexarMet's service area grew to include portions of Atascosa, Comal, and Medina counties.

Although BexarMet's service area expanded, its political boundaries for voting purposes did not. This situation was challenged in federal district court as violating the Voting Rights Act. *See Rios v. Bexar Metro. Water Dist.*, No. SA-96-CA-335 (W.D. Tex. Apr. 22, 1996). The parties settled the case and submitted a proposed consent decree to the federal court. The court

2

adopted the consent decree and ordered, pursuant to the decree, that BexarMet's boundaries coincide strictly with the geographic areas in which BexarMet provides water service.

In 2003, the Texas legislature amended BexarMet's enabling act by passing Senate Bill 1494. *See* Act of June 18, 2003, 78th Leg., R.S., ch. 375, 2003 Tex. Gen. Laws 1593 ("SB 1494"). Changes were made to the sections of the enabling act addressing BexarMet's powers, boundaries, and authority to annex. In conformity with the federal court's judgment in the *Rios* case, SB 1494 clarified that BexarMet's boundaries included the territories for which BexarMet had obtained CCNs. *See id.* § 3, sec. 5A(b), 2003 Tex. Gen. Laws at 1596.

In December 2003, Bulverde and GBRA filed this lawsuit seeking declaratory judgments related to BexarMet's boundaries and powers after passage of SB 1494. BexarMet responded by filing a plea to the jurisdiction, which the district court denied. BexarMet then filed an interlocutory appeal with this Court challenging the district court's ruling on jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2006). This Court affirmed the district court's ruling. *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 91 (Tex. App.—Austin 2004, pet. denied).

On remand, BexarMet again filed a plea to the jurisdiction asserting changed circumstances, but the district court overruled the plea. The parties filed cross-motions for summary judgment, and the district court granted Bulverde's and GBRA's motion and denied BexarMet's motion. The court entered a final judgment that included the following declarations: (1) BexarMet cannot provide service outside its statutory boundaries; (2) BexarMet's statutory boundaries for services other than retail water utility services are set out in section 5 of BexarMet's enabling act and

3

its statutory boundaries for retail water utility services are set out in section 5A(b) of BexarMet's enabling act; and (3) BexarMet has no authority to annex and incorporate additional area to its territory. This appeal by BexarMet followed.

## ANALYSIS

BexarMet raises two issues on appeal: (1) the district court should not have reached the merits of this case because the court lacked jurisdiction, and (2) the district court erroneously concluded that SB 1494 precludes BexarMet from expanding its service area or political boundaries.

### *Jurisdiction*

Whether a court has subject matter jurisdiction is a question of law subject to *de novo* review. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). In performing this review, an appellate court does not look to the merits of the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff has the burden of alleging facts to affirmatively demonstrate that the trial court has jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A declaratory judgment action does not vest a court with jurisdiction "to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968). A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be

4

resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). A controversy is considered justiciable if there exists a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.*

The issue of jurisdiction is before this Court for the second time. In the interlocutory appeal, BexarMet argued that no jurisdiction existed because GBRA and Bulverde were only competitors of BexarMet and, thus, lacked standing to challenge BexarMet's ability to act. *See, e.g.*, *English v. Landa Motor Lines*, 166 S.W.2d 721, 723 (Tex. Civ. App.—Austin 1942, writ ref'd w.o.m.). This Court rejected that argument, concluding that GBRA and Bulverde were not mere competitors. *Bexar Metro. Water Dist.*, 156 S.W.3d at 87-88. BexarMet now urges that, due to changed circumstances, GBRA and Bulverde are mere competitors and now lack standing to maintain this cause of action.

In the interlocutory appeal, this Court observed that "there are cases suggesting that a competitor, without more, lacks standing to challenge the actions of its competitor." *Id.* at 87. But, for two reasons, we determined that this prohibition did not apply to this case. First, GBRA was not a mere competitor. BexarMet had filed a petition with the TCEQ to compel GBRA to provide BexarMet with 3,000 acre-feet of water per year, and GBRA therefore had "a larger stake in the outcome of this case than as a mere competitor." *Id.* Second, both Bulverde and GBRA were "parties affected by the actions of BexarMet." *Id.* at 88. When a governmental authority's actions are void, as opposed to voidable, the actions can be challenged by affected parties. *Id.* (citing *City of Irving v. Callaway*, 363 S.W.2d 832, 834 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.)). We concluded that Bulverde and GBRA were affected parties because BexarMet was seeking to provide

5

water-utility service in an area served by Bulverde and seeking to compel GBRA to provide water to BexarMet. *Id.* BexarMet contends that these bases for standing are now moot because BexarMet has withdrawn its petition to compel water from GBRA, cancelled the planned acquisition of four water systems in Comal County, and withdrawn its application at the TCEQ seeking approval of the planned acquisition of the four water systems.

The mootness doctrine requires that courts avoid rendering advisory opinions by only deciding cases that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Texas Health Care Info. Council v. Seton Health Plan*, 94 S.W.3d 841, 846-47 (Tex. App.—Austin 2002, pet. denied). A case may become moot when allegedly wrongful behavior has passed and could not be expected to recur. *Securities & Exch. Comm'n v. Medical Comm. for Human Rights*, 404 U.S. 403, 406 (1972). However, a declaratory judgment action is not moot when a party voluntarily abandons the conduct at issue "without any binding admission or extrajudicial action that would prevent a recurrence of the challenged action." *Seton Health Plan*, 94 S.W.3d at 849-50 (citing *Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 511 (Tex. App.—Austin 1993, writ denied)); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."). The standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent:

6

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). The "heavy burden of persuading" the court that the challenged conduct cannot reasonably be expected to resume lies with the party asserting mootness. *Id.*

In *Del Valle I.S.D. v. Lopez*, this Court held that a declaratory judgment action challenging the constitutionality of an at-large electoral system was not mooted after the appellant voluntarily abandoned the system. 863 S.W.2d at 511. We stated that:

> Without a declaration by the court or an admission by Del Valle that the at-large system was unconstitutional, Del Valle was free to return to the at-large system. Therefore, because Del Valle refused to admit that the at-large system was unconstitutional, a declaration by the court that the system was unconstitutional was essential to Appellees' purpose: the elimination of the at-large system and the substitution of a single-member system.

*Id.* Similarly, in this case, BexarMet contends it has voluntarily taken actions that moot Bulverde's and GBRA's justiciable interest. However, while BexarMet has withdrawn its petition to compel water from GBRA, the withdrawal was without prejudice to refiling, and BexarMet has not demonstrated that there is no reasonable expectation that it would refile. In addition, while BexarMet has cancelled its planned acquisition of four water systems in Comal County and withdrawn its application at the TCEQ seeking approval of the acquisition, BexarMet has not demonstrated that there is no reasonable expectation that it would resume its plans. We conclude that BexarMet has failed to demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth, Inc.*, 528 U.S. at 189.

7

Thus, this declaratory judgment action is not moot, Bulverde and GBRA continue to have standing, and the district court had jurisdiction over this case. We overrule BexarMet's first issue.

***BexarMet's enabling act***

In its second issue, BexarMet disputes two of the district court's three declarations: (1) that BexarMet may not provide service outside of its boundaries and (2) that BexarMet may not annex and incorporate additional area to its territory. BexarMet does not challenge the court's declaration that BexarMet's *current* boundaries are those set forth in sections 5 and 5A of its amended enabling act.

The district court's declarations were made after cross-motions for summary judgment. We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties file motions for summary judgment, we determine all questions presented and render judgment. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). A summary judgment movant has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

Whether BexarMet has the power to expand its service area or political boundaries is a matter of statutory construction. We review matters of statutory construction *de novo*. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In construing statutes, our objective is to determine and give effect to the legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *see also* Tex. Gov't Code Ann. § 312.005 (West 2005). We look first to the "plain and

8

common meaning of the statute's words," and if a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Gonzalez*, 82 S.W.2d at 327.

### 1. *May BexarMet provide services outside of its boundaries?*

The dispute over whether BexarMet may provide services outside its boundaries stems from changes the legislature made to section 3 of BexarMet's enabling act, which sets forth BexarMet's general powers. Prior to 2003, the relevant portion of section 3 provided that BexarMet had the power, "Through every practical and legal means to control and regulate and to coordinate the control and regulation of the waters of the watershed of the San Antonio River and tributaries in the District and the storm and flood and underground waters of the District . . . ." BexarMet Act, § 3(a), 1945 Tex. Gen. Laws 491, 492. There was no reference in this provision to BexarMet's authority to act within or without its boundaries. As amended by SB 1494, BexarMet's power was altered to provide, "Through every practical and legal means to develop, transport, deliver, distribute, store and treat water *for use within the District*, including the storm and flood waters *within* the District . . . ." SB 1494, § 2, sec. 3(a), 2003 Tex. Gen. Laws at 1594 (emphasis added). Bulverde and GBRA contend that, because BexarMet's enabling act, as amended by SB 1494, only empowers BexarMet to deliver and distribute water *within* the district, BexarMet cannot provide retail water utility service outside its boundaries. BexarMet, however, argues that chapter 49 of the water code authorizes it to provide services outside its boundaries.

Chapter 49 applies to all general and special law districts to the extent that its provisions do not "directly conflict with a provision in any other chapter of [the water] code or any

9

Act creating or affecting a special law district."[1]  Tex. Water Code Ann. § 49.002(a) (West 2000).

If there is a direct conflict, the specific provisions of the other chapter or act control.  *Id.*  BexarMet

contends that two provisions of chapter 49 vest it with the general law authority to provide retail

service beyond its boundaries.  The first is section 49.211, which authorizes a district "to purchase,

construct, acquire, own, operate, maintain, repair, improve, or extend *inside and outside its*

*boundaries* any and all land, works, improvements, facilities, plants, equipment, and appliances

necessary to accomplish the purposes of its creation or the purposes authorized by this code or any

other law."  *Id.* § 49.211(b) (West Supp. 2006) (emphasis added).  The second is section 49.215,

which is titled "Service to Areas Outside the District" and provides that:

> A district may purchase, construct, acquire, own, operate, repair, improve, or extend
> all works, improvements, facilities, plants, equipment, and appliances necessary to
> provide any services or facilities authorized to be provided by the district *to areas*
> *contiguous to or in the vicinity of the district* provided the district does not duplicate
> a service or facility of another public entity.

*Id.* § 49.215(a) (West 2000) (emphasis added).  BexarMet contends that it has the powers listed in

these two sections because neither section "directly conflicts" with its enabling act.  *See id.*

§ 49.002(a).  We disagree.

BexarMet's enabling act, as amended, only empowers it to deliver and distribute

water "within" the district.  Thus, to the extent the provisions of chapter 49 permit service outside

a district's boundaries, they directly conflict with BexarMet's enabling act.  *See id.*  As we observed

---

[1]  BexarMet's enabling act specifies that the district has the rights, privileges, functions, and powers "as have been or may be conferred by General Law upon conservation districts."  Act of May 9, 1945, 49th Leg., R.S., ch. 306, § 2, 1945 Tex. Gen. Laws 491, 492.

in the interlocutory appeal, some water-district enabling acts provide that the water district may sell

or distribute water only within its boundaries, while others allow a water district to distribute or sell

water within or without its boundaries. *Bexar Metro. Water Dist.*, 156 S.W.3d at 83. BexarMet's

enabling act evidences this distinction by providing that some powers apply within and without of

BexarMet's boundaries, while others are limited to within its boundaries. *Compare* BexarMet Act,

§ 3, sec. 3(f)-(h), 1945 Tex. Gen. Laws at 493, *with id.*, § 3, sec. 3(c), 1945 Tex. Gen. Laws at 492,

*and* SB 1494, § 2, sec. 3(s), (t), 2003 Tex. Gen. Laws at 1595. The legislature's inclusion of the

word "within"—and only the word "within"—in describing BexarMet's power to deliver and

distribute water would be meaningless if indeed BexarMet could still deliver and distribute water

outside of its boundaries. We must presume that the legislature would not do a meaningless or

useless act. *Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954

(Tex. 1990); *see also* Tex. Gov't Code Ann. § 311.021 (West 2005).

This construction of the amendments to BexarMet's enabling act comports with the

legislative history available. As introduced, SB 1494 would have provided that BexarMet had the

power "to develop, transport, deliver, distribute, store and treat water including the storm and flood

waters *within or without* the District . . . ." Tex. S.B. 1494, 78th Leg., R.S. (2003) (introduced

version). But this language was amended to exclude "or without" and to include that the powers

listed were "for use within the District." Tex. S.B. 1494, 78th Leg., R.S. (2003) (senate committee

report).[2] Our construction of the amendments also is consistent with a legislative intent to resolve

---

[2] *See Transportation Ins. Co. v. Maksyn*, 580 S.W.2d 334, 338-39 (Tex. 1979) ("The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal. . . . Courts should be slow to put back that which the legislature has rejected." (citations

11

the problems that arose in the *Rios* litigation, which resulted in part from BexarMet providing service outside of its political boundaries. We conclude that the district court did not err in declaring that BexarMet cannot provide services outside of its boundaries.

### 2. May BexarMet expand its boundaries?

Whether BexarMet may expand its boundaries also is a matter of statutory construction. As originally enacted, BexarMet's enabling act expressly provided two methods of expansion. Section 6 allowed BexarMet to annex territory, and section 6a provided that BexarMet's boundaries would extend automatically to include any territory annexed into the City of San Antonio. BexarMet Act, §§ 6, 6a, 1945 Tex. Gen. Laws at 496-97. In 2003, the legislature repealed sections 6 and 6a. SB 1494, § 4, 2003 Tex. Gen. Laws at 1596. Thus, BexarMet's enabling act no longer contains any procedures for expanding its boundaries.

BexarMet contends that when the legislature repealed sections 6 and 6a, it merely "deleted antiquated provisions that were no longer necessary" because sections 49.301 and 49.302 of the water code authorize annexation. *See* Tex. Water Code Ann. § 49.301 (West 2000), § 49.302 (West Supp. 2006). According to BexarMet, these provisions in chapter 49 would apply because there is nothing in BexarMet's enabling act that directly conflicts. We disagree. When BexarMet's

omitted)); *see also Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 23 (Tex. 1996).

enabling act was amended in 2003, the legislature added section 5A, which expressly defines

BexarMet's boundaries. Section 5A provides that:

(a) The District's boundaries for purposes of the exercise of its powers and duties is defined in Section 5 of this Act, [which contains a metes and bounds description of the boundaries].

(b) In conformity with the court's judgment dated April 22, 1996, in Cause No. SA96CA0335, *Rios v. Bexar Metropolitan Water District et al.*, in the United States District Court, Western District of Texas, and for the purpose of the exercise of its current retail water utility services, the District's boundaries shall include the territory defined in all or applicable portions of census tracts or property situated within any area certified by the Texas Commission on Environmental Quality to the District on the date of passage of the Act adding this section pursuant to Certificates of Convenience and Necessity Nos. 10675, 12759, and 12760.

SB 1494, § 3, sec. 5A, 2003 Tex. Gen. Laws at 1596. Because BexarMet's enabling act expressly

defines the limits of BexarMet's territory, the power to annex additional territory would create a

direct conflict between chapter 49 and BexarMet's enabling act. In addition, SB 1494 included two

grandfathering provisions stating that the repeal of sections 6 and 6a would "not affect an annexation

proceeding initiated before the effective date" of the act and would "not affect a pending application

for a certificate of convenience and necessity that has been referred by the Texas Commission on

Environmental Quality to the State Office of Administrative Hearings before the effective date" of

the act. *Id.* § 5(b)-(c), 2003 Tex. Gen. Laws at 1596. Had BexarMet continued to have annexation

powers after the legislature enacted SB 1494, these provisions would not have been necessary. Nor

would the inclusion of these provisions be consistent with the admonition that the legislature would

not do a meaningless or useless act. *Webb County Appraisal Dist.*, 792 S.W.2d at 954; *see also*

13

Tex. Gov't Code Ann. § 311.021. We therefore conclude that the district court did not err in declaring that BexarMet has no authority to annex and incorporate additional area to its territory.

## CONCLUSION

Because we conclude that the district court had jurisdiction over this case and correctly declared that BexarMet cannot provide services outside its statutory boundaries and has no authority to annex and incorporate additional area to its territory, we affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 27, 2007

14