**Opinion filed September 9, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00206-CV

_____

## THE ECTOR COUNTY ALLIANCE OF BUSINESSES, Appellant

## V.

## GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS; JOHN W. HELLERSTEDT, IN HIS OFICIAL CAPACITY AS THE COMMISSIONER OF PUBLIC HEALTH OF THE STATE OF TEXAS AND/OR AS COMMISSIONER OF THE TEXAS DEPARTMENT OF STATE HEALTH SERVICES; AND THE STATE OF TEXAS, Appellees

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-20-07-0749-CV**

### M E M O R A N D U M   O P I N I O N

Pursuant to the Texas Disaster Act of 1975, TEX. GOV'T CODE ANN. §§ 418.001–.261 (West 2019 & Supp. 2020), on March 13, 2020, Appellee Greg

Abbott, in his official capacity as the Governor of the State of Texas (the Governor), proclaimed that a state of disaster existed in Texas due to COVID-19. On March 19, 2020, Appellee John Hellerstedt, in his official capacity as the Commissioner of the Texas Department of State Health Services (the Commissioner), declared a state of public health disaster from COVID-19 under the Communicable Disease Prevention and Control Act, TEX. HEALTH & SAFETY CODE ANN. §§ 81.001–.408 (West 2017 & Supp. 2020). In each subsequent month, the Governor renewed the state of disaster through a series of proclamations,[1] and the Commissioner extended the public health disaster through a combination of new declarations and the renewal of existing declarations.[2]

The Governor also issued a series of executive orders including, as relevant to this appeal, orders that placed restrictions on an individual's ability to patronize bars for in-person service. Appellant, the Ector County Alliance of Businesses (the Alliance), an organization comprised of three members who operate bars in Ector County, sued and, in five causes of action, alleged that two sections of the Disaster Act are unconstitutional, that eight specific executive orders issued by the Governor are unconstitutional, and that the Governor and the Commissioner acted ultra vires when they issued certain executive orders, proclamations, and declarations. The Alliance requested both retrospective and prospective declaratory and injunctive relief. The trial court granted Appellees' pleas to the jurisdiction and dismissed the Alliance's claims.

---

[1]In his most recent proclamation, issued on August 29, 2021, the Governor renewed the state of disaster and noted both that he issued a disaster proclamation on March 13, 2020, for all counties in Texas and that he had renewed that proclamation in each subsequent month. *See* https://gov.texas.gov/uploads/files/press/DISASTER_renewing_covid19_disaster_proclamation_IMAGE_08-29-2021.pdf (last visited on September 7, 2021).

[2]The Commissioner's last declaration of a public health disaster was issued on May 10, 2021, and is no longer in effect. *See* https://www.dshs.state.tx.us/coronavirus/docs/PHDD-051021.pdf (last visited on September 7, 2021); Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.179, 2003 Tex. Gen. Laws 611, 715 (amended 2021) (current version at HEALTH & SAFETY § 81.082(d)).

In two issues, the Alliance argues that the trial court erred when it granted Appellees' pleas to the jurisdiction and when it granted the Commissioner's plea to the jurisdiction without affording the Alliance an opportunity to amend its pleadings. Appellees filed a motion to dismiss the case as moot because the complained-about executive orders have been superseded and there are no longer any COVID-19-related restrictions imposed through an executive order on individuals patronizing bars for in-person service. We notified the parties that we would carry the motion to dismiss until the appeal was submitted.

We grant Appellees' motion to dismiss, in part; vacate the trial court's order granting the Commissioner's plea to the jurisdiction and dismiss all of the Alliance's claims against the Commissioner for want of jurisdiction; and vacate the trial court's orders granting the Governor and the State's plea to the jurisdiction as to the Alliance's second, third, fourth, and fifth causes of action and dismiss the Alliance's second, third, fourth, and fifth causes of action against the Governor and the State for want of jurisdiction. We affirm the trial court's orders granting the Governor and the State's plea to the jurisdiction as to the Alliance's first cause of action.

*Relevant Statutory Provisions*

The Disaster Act establishes a detailed, comprehensive framework that, in the case of a disaster, allocates powers, duties, and responsibilities across various levels of state government and multiple agencies. *Houston Cmty. Coll. v. Hall Law Grp., PLLC*, No. 01-20-00673-CV, 2021 WL 2369505, at *11 (Tex. App.—Houston [1st Dist.] June 10, 2021, no pet. h.) (mem. op.). One of the statute's stated purposes is to "clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local government in prevention of, preparation for, response to, and recovery from disasters." GOV'T § 418.002(4).

A "disaster" is "the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made

3

cause," including an epidemic. *Id.* § 418.004(1). The governor of Texas is responsible for meeting "the dangers to the state and people presented by disasters." *Id.* § 418.011(1). If the governor finds that a disaster has occurred or that occurrence or threat of a disaster is imminent, he may declare a state of disaster by either executive order or proclamation. *Id.* at § 418.014(a). The state of disaster may not continue for more than thirty days unless renewed by the governor. *Id.* § 418.014(c). However, "[t]he legislature by law may terminate a state of disaster at any time." *Id.* The Disaster Act authorizes the governor (1) to issue executive orders, proclamations, and regulations that have the "force and effect of law"; (2) to amend or rescind the executive orders, proclamations, and regulations; and (3) to suspend certain statutory provisions if compliance with those provisions would hinder or delay actions necessary to cope with the disaster. *Id.* §§ 418.012, .016(a).

The Disease Control Act authorizes the Department of State and Health Services to impose control measures to prevent the spread of disease. HEALTH & SAFETY §§ 11.001(3); 81.081. As relevant in this case, control measures can include restriction, isolation, quarantine, and prevention. HEALTH & SAFETY § 81.082(f).

During the relevant time period, the Disease Control Act defined a "public health disaster" as:

(A) a declaration by the governor of a state of disaster; and

 (B) a determination by the commissioner that there exists an immediate threat from a communicable disease that:

(i) poses a high risk of death or serious long-term disability to a large number of people; and

(ii) creates a substantial risk of public exposure because of the disease's high level of contagion or the method by which the disease is transmitted.

4

Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.167, 2003 Tex. Gen. Laws 611, 713 (amended 2021) (current version at HEALTH & SAFETY § 81.003(7)). During the time period relevant to this appeal, the commissioner was statutorily authorized to declare a public health disaster that continued for not more than thirty days and to renew the declaration one time for an additional thirty days. Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 2.179, 2003 Tex. Gen. Laws 611, 715 (amended 2021) (current version at HEALTH & SAFETY § 81.082(d)).

*Background*

On March 13, 2020, the Governor issued a proclamation under Section 418.014 of the Disaster Act certifying that "COVID-19 pose[d] an imminent threat of disaster" for all counties in Texas. In each subsequent month, the Governor renewed the disaster proclamation.[3] The Governor signed the most recent disaster proclamation on August 29, 2021.[4]

On March 19, 2020, the Commissioner declared a public health disaster in Texas from COVID-19. The Commissioner determined that people, businesses, and communities in Texas should take certain steps to reduce and delay the spread of COVID-19. The Commissioner renewed a declaration of a public health disaster or issued a new declaration every month through May 2021.[5]

The Governor also issued a series of executive orders that mandated restrictions on certain activities by individuals and businesses in Texas. The Alliance specifically complains about Executive Orders GA-08, GA-14, GA-16,

---

[3]*See* https://gov.texas.gov/uploads/files/press/DISASTER_renewing_covid19_disaster_proclamation _IMAGE_08-29-2021.pdf (last visited on September 7, 2021).

[4]*See id.*

[5]*See* https://www.dshs.state.tx.us/coronavirus/docs/PHDD-051021.pdf (last visited on September 7, 2021).

GA-18, GA-21, GA-23, GA-26, and GA-28.[6]  These orders were issued between March 19, 2020, and June 26, 2020, and placed restrictions on the ability of people to patronize and to be served in bars, as defined in the orders.  The majority of these executive orders referred to the Commissioner's declarations.

The Alliance sued the Governor; the Commissioner; the State of Texas; Adrian Bentley Nettles, in his official capacity as Executive Director of the Texas Alcoholic Beverage Commission; and John Lopez, in his official capacity as an Agent of the TABC.  The Alliance nonsuited its claims against Bentley and Lopez after they filed a motion to transfer the case to Travis County.

As to Appellees, in five causes of action, the Alliance sought declarations (1) that two sections of the Disaster Act are unconstitutional and the remainder of the statute is unenforceable; (2) that GA-08, GA-14, GA-16, GA-18, GA-21, GA-23, GA-26, and GA-28 are unconstitutional because the Governor improperly purported to enact and suspend laws and that the Governor acted ultra vires in decreeing those executive orders; (3) that GA-28 is unconstitutional because it infringed on the constitutional rights of the members of the Alliance and of the public and constituted an unreasonable seizure and taking of the Alliance members' property without adequate compensation; and (4) that the Commissioner's first declaration had expired and was no longer valid; that the Commissioner's subsequent declarations were ultra vires acts; and that to the extent the Governor purported to rely on the Commissioner's subsequent declarations as authority for any executive order, that executive order was void.  The Alliance also sought injunctive relief (1) that prohibited the Governor from enacting or decreeing any executive order under the Disaster Act, (2) that prohibited the Governor from

_____

[6]GA-26 was amended by a June 23, 2020 proclamation, and GA-28 was amended by a July 2, 2020 proclamation.  Because the amendments are not relevant to our analysis, we will not refer to them separately in this opinion.

enacting GA-08, GA-14, GA-16, GA-18, GA-21, GA-23, GA-26, or GA-28; (3) that prohibited the Governor from decreeing any executive order that was founded on or referenced one of the Commissioner's declarations and (4) that prohibited the Governor or any other agent of the State from enforcing any executive order issued under the Disaster Act or that was founded on or referenced a declaration by the Commissioner.

Appellees filed pleas to the jurisdiction on the grounds that the Alliance did not have standing and that the Alliance's claims were barred by sovereign immunity. The Governor and the State also argued that only the Texas Supreme Court had the authority to issue a writ of mandamus or an injunction against the Governor. The trial court granted the pleas and dismissed the Alliance's claims. The Alliance filed its notice of appeal on September 8, 2020.

The Governor issued Executive Order GA-30 on September 17, 2020;[7] Executive Order GA-32 on October 7, 2020;[8] and Executive Order GA-34 on March 2, 2021.[9] GA-30 superseded GA-28, GA-32 superseded GA-30, and GA-34 superseded GA-32. In GA-34, the Governor ordered that, effective March 10, 2021, there were no COVID-19-related operating limits for any business or other establishment in any county that did not have a high hospitalization rate, as defined by the order.[10] Based on GA-34, Appellees filed a motion to dismiss, arguing that this case was moot because the orders about which the Alliance complained had

---

[7]*See* https://www.lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/GA-30.pdf (last visited on September 7, 2021).

[8]*See* https://www.lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/GA-32.pdf (last visited on September 7, 2021).

[9]*See* https://www.lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2021/GA-34.pdf (last visited on September 7, 2021).

[10]*See id.* GA-34 further provided that there were no "state-imposed COVID-19-related operating limits" for any business or establishment in any county with a high hospitalization rate, as defined by the order, but that, in a county with a high hospitalization rate, the county judge could use "COVID-19-related mitigation strategies" within certain parameters. *Id.*

been superseded and all COVID-19-related restrictions on people patronizing and being served in bars had been lifted.

*Mootness*

We address mootness as a threshold issue because it concerns our subject-matter jurisdiction. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (holding that Texas courts do not have jurisdiction to decide moot cases); *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). We review de novo the question of whether a claim is moot. *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016).

The doctrine of mootness, which is rooted in the separation of powers doctrine, prohibits courts from issuing advisory opinions. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021). A claim is moot when there ceases to be a justiciable controversy between the parties, the parties no longer have a legally cognizable interest in the outcome, the court can no longer grant the requested relief or otherwise affect the parties' rights or interests, or any decision would constitute an impermissible advisory opinion. *Id.* at 634–35.

A case can become moot at any time, including on appeal, and we have "an obligation to take into account intervening events that may render a lawsuit moot." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 166–67 (Tex. 2012). However, a case "is not rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). If only some claims or issues become moot, the case remains live as to the other claims or issues that are not moot. *See id.* If a claim is moot, we must vacate all previously issued orders and judgments and dismiss the claim for want of jurisdiction. *Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 527 (Tex. 2019).

## A. Claims Against the Commissioner

In their fifth cause of action, the Alliance alleged (1) that the Commissioner had statutory authority only to declare one public health disaster for a period of thirty days and to renew that declaration one time for a period not to exceed thirty days and (2) that any declaration of a public health disaster by the Commissioner after May 18, 2020, was an ultra vires act. The Alliance requested declarations (1) that the Commissioner's first declaration of a public health disaster had expired under the provisions of the Disease Control Act; (2) that the Commissioner's second declaration of a public disaster was an ultra vires act and was void; and (3) that to the extent the Governor purported to rely on the Commissioner's second declaration as authority for any executive order, that executive order was void. The Alliance also requested an injunction that prohibited the Governor from issuing any additional executive orders that relied upon or referenced either of the Commissioner's declarations and that prohibited the Governor and any other agent of the State from enforcing any executive order that was founded upon or referenced the Commissioner's declarations.

The Alliance does not dispute that, in March 2020, the Commissioner was authorized by the Disease Control Act to declare a public health disaster for a period of thirty days and to renew that declaration for an additional thirty days. Rather, the Alliance contends that, after that sixty-day period, the Commissioner was not authorized by the statute to either make subsequent declarations of a public health disaster based on COVID-19 or to renew those subsequent declarations. The Alliance alleges that it was harmed by the Commissioner's conduct because the Commissioner stated in the declarations that individuals were required to abide by the Governor's executive orders and the Governor referenced the Commissioner's declarations in his executive orders. The Alliance argues that, if its requested relief is granted, the Commissioner "will be prohibited from issuing 'new' declarations or

9

renewals, which have routinely purported to limit the rights of members of the Alliance and upon which [the Governor] has routinely cited and relied in issuing his executive orders."

A plaintiff's challenge to a statute or written policy may become moot if the statute or policy is repealed or fundamentally altered. *Heckman*, 369 S.W.3d at 167. Effective June 16, 2021, the Texas Legislature amended the Disease Control Act and created the Legislative Public Health Oversight Board (the Board) "to provide oversight for declarations of public health disasters and orders of public health emergencies" issued by the Commissioner. HEALTH & SAFETY § 81.0821(b). The Board is comprised of the lieutenant governor and members of both houses of the legislature. *Id.* § 81.0821(c).

The Commissioner is still authorized to declare a public health disaster that may continue for not more than thirty days. *Id.* § 81.082(d). However, not later than the seventh day after he issues the declaration of a public health disaster, the Commissioner is required to consult with the chairs of the legislative standing committees with primary jurisdiction over public health regarding the disaster. *Id.* § 81.082(d-2). Further, although the declaration of a public health disaster may be renewed for an additional thirty days, the renewal must be done by the legislature or by the Commissioner with the approval of the Board. *Id.* §§ 81.082(d), .0821(b).[11]

The gravamen of the Alliance's claims against the Commissioner is that the Commissioner did not have statutory authority to issue successive declarations based on the same public health disaster. However, under the amended statute, the

---

[11]We note that, in the 2021 regular legislative session, the Texas House of Representatives passed legislation that would have applied to government response to a pandemic disaster. *See* Tex. H.B. 3, 87th Legs. R.S. (2021). The proposed legislation established the Pandemic Disaster Legislative Oversight Committee and, in several respects, placed specific restrictions on the actions that the Governor would be allowed to take through executive order or proclamation to either proclaim a pandemic disaster or address the disaster. *See id.* The Texas Senate proposed several amendments to House Bill 3, and the two legislative bodies appointed members to a conference committee. The legislative session ended without the bill being passed.

Commissioner may not declare a public health disaster without consulting with the designated members of the legislature or renew any such declaration without the approval of the Board. Because the Commissioner's statutory authority to declare and renew declarations of a public health disaster has been fundamentally altered, the Alliance's claims based on the declarations by the Commissioner that were made pursuant to the repealed statute and that have expired are moot.

### B. Retrospective Claims Against the Governor and the State

In its second and third causes of action, the Alliance alleged that in GA-08, GA-14, GA-16, GA-18, GA-21, GA-23, GA-26, and GA-28 the Governor improperly suspended statutes and enacted laws. The Alliance requested declarations that those executive orders were unconstitutional and that the Governor acted ultra vires when he purported to suspend and decree laws in those orders. In its fourth cause of action, the Alliance alleged that GA-28 infringed on the constitutional rights of the members of the Alliance and of the public and was an unconstitutional taking of the property of the members of the Alliance. The Alliance requested an injunction that prohibited the Governor or any other agent of the State from enacting or enforcing GA-08, GA-14, GA-16, GA-18, GA-21, GA-23, GA-26, and GA-28 and that prohibited the Governor from issuing any executive orders that purported to suspend or enact laws.

All of the complained-about executive orders have been superseded and all restrictions on people entering bars for in-person service have been lifted. Further, the Alliance has conceded that none of its members are subject to a pending enforcement action for the violation of the superseded orders. *See Heckman*, 369 S.W.3d at 162 (holding that, after the criminal cases against them had been resolved, the plaintiffs no longer had a cognizable interest in obtaining injunctive or declaratory relief from the defendants' alleged violation of their, and the putative class's, criminal procedure rights). Therefore, the Alliance's request for declarations

11

that GA-08, GA-14, GA-16, GA-18, GA-21, GA-23, GA-26, and GA-28 are unconstitutional and that the Governor acted ultra vires when he issued these orders and for an injunction that prohibits the enforcement of those superseded orders can no longer affect the parties' interests. *See id.*; *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) ("[W]hen the action sought to be enjoined is accomplished and 'suitable coercive relief' becomes impossible, it is improper to grant declaratory relief."); *State v. City of Austin*, No. 03-20-00619-CV, 2021 WL 1313349, at *5 (Tex. App.—Austin Apr. 8, 2021, no pet.) (mem. op.) (holding that claim for injunctive relief to stop the enforcement of an existing local order was moot because the Governor had issued GA-34, which superseded GA-32); *see also Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed."). We hold that the Alliance's second, third, and fourth causes of action against the Governor and the State are moot.

C. *Prospective Claims Against the Governor and the State*

In its first cause of action, the Alliance alleged that the Disaster Act violated the separation of powers clause of the Texas Constitution because it delegated to the Governor the authority to enact and suspend laws. The Alliance requested (1) declarations that Sections 418.012 and 418.016 of the Disaster Act are unconstitutional and that the remainder of the Disaster Act is so interrelated and dependent upon those two sections that the entire statute is unenforceable and (2) an injunction that prohibits the Governor from enacting or decreeing any executive orders under the Disaster Act and prohibits the Governor or any other agent of the State from enforcing any executive order issued under the Disaster Act.

Appellees contend that there is no longer a justiciable controversy between the parties because the Governor issued GA-34 and lifted all COVID-19-related restrictions on people patronizing, and being served in, bars. A case may become

12

moot when allegedly wrongful behavior has ceased and could not be expected to recur. *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.) (citing *Sec. & Exch. Comm'n v. Med. Comm'n for Human Rights*, 404 U.S. 403, 406 (1972)). However, "[a] defendant's cessation of challenged conduct does not, in itself, deprive a court of the power to hear or determine claims for prospective relief." *Matthews*, 484 S.W.3d at 418.[12] "If it did, defendants could control the jurisdiction of courts with protestations of repentance and reform, while remaining free to return to their old ways," which "would obviously defeat the public interest in having the legality of the challenged conduct settled." *Id.* Therefore, when a defendant contends that a claim is moot because it has voluntarily ceased the complained-about conduct, dismissal is appropriate only "when subsequent events make 'absolutely clear that the [challenged conduct] could not reasonably be expected to recur.'" *Id.* (quoting *Bexar Metro. Water Dist.*, 234 S.W.3d at 131) (alterations in original). The defendant has the "heavy" burden of persuading the court that the challenged conduct cannot reasonably be expected to recur. *Id.* (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)); *see also Bexar Metro. Water Dist.*, 234 S.W.3d at 131 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 529 U.S. 167, 189 (2000)).

Here, the Governor and the State assert in their motion to dismiss that it cannot reasonably be expected that similar restrictions on the operations of bars will be imposed in the future because GA-34, which lifted all COVID-19-related restrictions on businesses, has been in effect since March 10, 2021; "COVID-19 cases and

---

[12]In post-submission briefing, the Governor and the State assert that the issue of voluntary cessation of the challenged conduct is not before this court because the Alliance failed to brief the issue with citations to authority. However, this court has the obligation to review *sua sponte* issues affecting our jurisdiction. *Haynes & Boone, LLP v. NFTD, LLC*, No. 20-0066, 2021 WL 2021453, at *4 (Tex. May 21, 2021). "And we have the power, 'on affidavit or otherwise,' to 'ascertain the matters of fact that are necessary to the proper exercise of [our] jurisdiction,' even if evidence establishing those facts is not in the trial court's record." *Harper*, 562 S.W.3d at 7 (quoting GOV'T § 22.001(d)) (alteration in original).

13

fatalities in Texas have decreased significantly since the peaks experienced in Summer 2020 and around the beginning of 2021"; and "an additional surge is unlikely, given that about half of Texans age 12 and over have received at least one dose of the COVID-19 vaccine and over a third are fully vaccinated." However, the Governor and the State have not admitted that any of the executive orders were wrongfully issued and continue to maintain that the Governor has the authority to issue such orders. *See Matthews*, 484 S.W.3d at 419 (holding that when the defendant has ceased the challenged conduct, but has not admitted the conduct was unlawful, its "stance is a significant factor in the mootness analysis, and one which prevents its mootness argument from carrying much weight"). Further, based on recent data, COVID-19 cases and hospitalizations in Texas have increased at a significant rate since Appellees filed the motion to dismiss.[13]

On this record, the Governor and the State did not meet their heavy burden to make it absolutely clear that restrictions on people patronizing, and being served in, bars will not be reimposed through a future executive order. *See Matthews*, 484 S.W.3d at 420 (holding that voluntary abandonment of policy "provide[d] no assurance" that the policy would not be reinstated); *Bexar Metro. Water Dist.*, 234 S.W.3d at 131–32 (holding that request for declaratory relief was not moot because the defendant had not demonstrated that there was not a reasonable expectation that petition would not be refiled); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 68 (2020) (per curiam) (holding that request for an injunction to prevent enforcement of an executive order that placed occupancy limits on houses of worship based on the classification of an area as orange or red for purposes of the COVID-19 pandemic was not moot even after the areas were reclassified as yellow

---

[13]*See* https://txdshs.maps.arcgis.com/apps/dashboards/ed483ecd702b4298ab01e8b9cafc8b83 (Trends) (last visited on September 7, 2021); https://txdshs.maps.arcgis.com/apps/dashboards/0d8bdf9be927459d9cb11b9eaef6101f (last visited on September 7, 2021).

14

because the applicants remained under a constant threat that the areas could be reclassified as orange or red and the governor had regularly changed the classification of particular areas without prior notice). Therefore, the Alliance's first cause of action is not moot.

We grant Appellees' motion to dismiss, in part; vacate the trial court's order granting the Commissioner's plea to the jurisdiction and dismiss all of the Alliance's claims against the Commissioner for want of jurisdiction; and vacate the trial court's orders granting the Governor and the State's plea to the jurisdiction as to the Alliance's second, third, fourth, and fifth causes of action and dismiss the Alliance's second, third, fourth, and fifth causes of action against the Governor and the State for want of jurisdiction. *See Glassdoor*, 575 S.W.3d at 527; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 586 (Tex. 2017) (vacating only that portion of the judgment relating to claim that had become moot).

*Plea to the Jurisdiction*

In its first cause of action, the Alliance requested prospective declaratory and injunctive relief against the Governor and the State on the ground that Sections 418.012 and 418.016 of the Disaster Act violated the separations of power clause of the Texas constitution by permitting the Governor to enact and suspend laws. The Governor and the State filed a plea to the jurisdiction on the grounds that the Alliance lacked standing, that the Alliance's claims were barred by sovereign immunity, and that only the Texas Supreme Court had jurisdiction to issue injunctive relief against the Governor. The trial court granted the plea without specifying the basis for its ruling. As it is dispositive, we need address only whether the trial court properly dismissed the Alliance's first cause of action against the Governor and the State because the Alliance lacked standing to seek the requested relief.

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a cause of action without regard to whether the claim has merit. *Bland Indep. Sch. Dist. v. Blue*,

15

34 S.W.3d 547, 554 (Tex. 2000). An assertion that the trial court lacks subject-matter jurisdiction over a claim is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Because the existence of subject-matter jurisdiction is a question of law, we review de novo the trial court's ruling on a plea to the jurisdiction. *In re Lubbock*, 624 S.W.3d 506, 512 (Tex. 2021) (orig. proceeding).

"A plea to the jurisdiction 'may challenge the pleadings, the existence of jurisdictional facts, or both.'" *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). When, as in this case, the plea challenges the pleadings, the plaintiff has the burden to plead facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Id.*; *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff met this burden, we must construe the pleadings liberally in favor of the plaintiff, take all factual assertions as true, and look to the plaintiff's intent. *Rangel*, 595 S.W.3d at 205; *Miranda*, 133 S.W.3d at 226.

A plaintiff's standing to assert a claim "is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam). If a plaintiff lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it. *Heckman*, 369 S.W.3d at 150.

Standing requires that there be a real controversy between the parties which will be actually determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). To have standing to challenge a statute, the plaintiff (1) must have suffered some actual or threatened injury under the statute and (2) must contend that the statute unconstitutionally restricts its rights. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015); *see also In re Abbott*, 601 S.W.3d at 812 (holding that, to have standing based on a

16

perceived threat of injury that has not yet come to pass, the plaintiff must "allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The alleged injury "must be concrete and particularized, actual or imminent, not hypothetical." *Heckman*, 369 S.W.3d at 155 (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)); *see also Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021).

An association may sue on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests that the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995); *see also Heckman*, 369 S.W.3d at 155. Standing must exist at the time that the plaintiff files suit and a controversy must "continue to exist between the parties at every stage of the legal proceedings, including the appeal." *Martin v. Clinical Pathology Laboratories, Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied).

In *Garcia v. City of Willis*, the plaintiff sued the City on behalf of himself and of individuals who had paid a civil penalty for violating a city ordinance that created a photographic traffic-signal enforcement system that penalized red-light infractions caught on camera. 593 S.W.3d 201, 204–05 (Tex. 2019). The plaintiff requested, among other relief, prospective injunctive and declaratory relief that the ordinance and its enabling statutes were unconstitutional. *Id.* at 205, 207. However, the plaintiff had paid the fine for the violation and had not pleaded that he was subject to any outstanding violation notices that caused him imminent harm. *Id.* at 207. He also had not argued that he planned to violate red-light laws in the future. *Id.*

The supreme court held that, because the plaintiff had resolved his only notice of violation by paying the civil fine, he did not have a "concrete or particularized stake in the validity or future application of the ordinance, the statutes that enable it, or a declaration that city officials acted ultra vires in the past." *Id.* at 207. Rather, the requested prospective relief could not help the plaintiff because he no longer faced the allegedly unconstitutional conduct about which he complained. *Id.* Finally, because the plaintiff alleged only a past injury based on having already paid the civil penalty and had not alleged a "continuing violation or the likelihood of a future [injury], injunctive relief" would not redress his injury. *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)) (alteration in original).

Similarly, the Alliance has conceded that none of its members face a pending enforcement action for the violation of any executive order and did not argue that one or more of its members intend to violate any restrictions that might be imposed by a future executive order. Further, all of the complained-about executive orders have been superseded and all COVID-19-related restrictions on the Alliance's member's business operations imposed by the executive orders have been lifted. Because the Alliance's members no longer face the purportedly unlawful conduct about which the Alliance complains, prospective relief would not help the Alliance. Finally, injunctive relief would not provide the Alliance any redress because it has asserted only a past injury to its members based on the threatened enforcement of superseded executive orders. Accordingly, as to its request for prospective declaratory and injunctive relief, the Alliance "stands in the same shoes as any other citizen who might potentially" be impacted by restrictions imposed in a future executive order and has failed to show that it has "the particularized interest for standing that prospective relief requires." *See id.* at 208; *see also In re Abbott*, 601 S.W.3d at 812 ("To establish standing based on a perceived threat of injury that has not yet come to pass, the 'threatened injury must be certainly impending to constitute

18

injury in fact'; mere '[a]llegations of possible future injury are not sufficient.'" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (alteration in original).

In addition to a particularized injury, the Alliance was required to plead that the actual or threatened injury was fairly traceable to the unlawful conduct of the defendants and that the requested relief would likely redress the injury. *See Heckman*, 369 S.W.3d at 155. To meet this burden, the Alliance was required to sue the party with authority to enforce the challenged executive orders. *See City of El Paso v. Tom Brown Ministries*, 505 S.W.3d 124, 147 (Tex. App.—El Paso 2016, no pet.) ("In order to establish standing and a justiciable controversy between the parties, there must be 'an actual enforcement connection—some enforcement power or act that can be enjoined—between the defendant official and the challenged statute." (quoting *Okpalobi v. Foster*, 244 F.3d 405, 419 (5th Cir. 2001) (en banc)); *Rylander v. Caldwell*, 23 S.W.3d 132, 138 (Tex. App.—Austin 2000 [mand. dism'd]) (holding that a court is without jurisdiction to determine the constitutionality of a statute unless the party with the authority to enforce the challenged statute is named in the suit and that the court may not issue an injunction unless "it is shown that the respondent will engage in or is engaging in the activity sought to be enjoined" (quoting *Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 298 (Tex. App.—Austin 1996, no writ))).

Pursuant to Section 418.173 of the Disaster Act, a state emergency management plan, including an executive order, may provide that a failure to comply with the plan or with a rule, order, or ordinance adopted under the plan, is an offense punishable by a fine not to exceed $1,000 or confinement in jail for not more than 180 days. Gov't § 418.173. In GA-28, the Governor stated that the failure to comply with any executive order issued during the COVID-19 disaster (1) was an offense punishable under Section 418.173 by a fine not to exceed $1,000 and (2) could be subject to "regulatory enforcement." The Disaster Act, however, does

not give the Governor the authority to enforce an executive order through the regulatory process or by imposing a fine. *See id.* § 418.012 (giving the Governor the authority to issue, amend, and rescind executive orders); *In re Abbott*, 601 S.W.3d at 812 ("Important for standing, however, is the State's acknowledgment that GA-13's enforcement will not come in the form of criminal prosecutions by the Governor or the Attorney General.").

The Alliance pleaded that its members were "shut down from operating their businesses" by threatened enforcement of the executive orders (1) through notices issued by the TABC to TABC permit holders based upon the Governor's waiver and suspension of statutes contained in the Texas Alcoholic Beverage Code and (2) by "TABC agents such as Lopez." Further, at oral argument, the Alliance argued that, although none of its members were currently the subject of a formal enforcement action, its members had been threatened with enforcement of the superseded executive orders by the TABC and by local law enforcement agents. The Alliance, however, nonsuited its claims against the TABC and did not sue any local law enforcement agents.

The Alliance did not plead that the Governor or the State ever threatened to enforce any executive order, and the Governor and the State have conceded that they do not have the authority to do so. Absent a credible threat of enforcement of any executive order by the Governor or the State, the Alliance does not have standing to seek the requested prospective relief. *See In re Abbott*, 601 S.W.3d at 813; *Tom Brown Ministries*, 505 S.W.3d at 147 ; *see also 6th St. Bus. Partners LLC v. Abbott*, No. 1:20-CV-706-RP, 2020 WL 4274589, at *4 (W.D. Tex. July 24, 2020) ("Texas law does not explicitly grant Abbott the power to enforce compliance with GA-28. And if Abbott lacks that power, Plaintiffs cannot establish that he caused their enforcement-based injury or that enjoining certain activities by Abbott would redress their injury.").

We hold that the Alliance failed to establish that it has standing to pursue its prospective claims for declaratory and injunctive relief against the Governor and the State. Therefore, the trial court properly granted the Governor and the State's plea to the jurisdiction as to the Alliance's first cause of action. We overrule the Alliance's first issue to the extent that it pertains to the Alliance's first cause of action against the Governor and the State.

*This Court's Ruling*

We grant Appellees' motion to dismiss, in part; vacate the trial court's order granting the Commissioner's plea to the jurisdiction and dismiss all of the Alliance's claims against the Commissioner for want of jurisdiction; and vacate the trial court's orders granting the Governor and the State's plea to the jurisdiction as to the Alliance's second, third, fourth, and fifth causes of action and dismiss the Alliance's second, third, fourth, and fifth causes of action against the Governor and the State for want of jurisdiction. We affirm the trial court's order dismissing the Alliance's first cause of action against the Governor and the State.

W. BRUCE WILLIAMS
JUSTICE

September 9, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.